Day, J.
It is only necessary to notice the alleged errors which are relied upon in argument for a reversal of the judgment.
1. It is claimed the court erred in overruling a motion to continue the case to the next term. Aside from the consideration that nothing appears in the case, as claimed to be made, to warrant a reversal of the judgment on that ground, it is a sufficient answer to the objection that the record does not show that the overruling of the motion was excepted to. The record merely shows that the motion was filed and overruled. It is true there is copied with the record an affidavit for a continuance of the case; but whether the affidavit, or any proof whatever, was presented to the court on the hearing of the motion, does not appear. No allusion to the motion or affidavit is made in the bill of exceptions. The overruling of the motion could be brought in review only by placing upon the record all the evidence produced to the court upon which it was called to act. Evidence given in a case, though copied as part of the l’ecord by the clerk, can not be regarded as part of, or matter of record, unless it is made such by bill of exceptions, oris embraced in the entry of the court. Goldsmith v. The State, 30 Ohio St. 208; Garner v. White, 23 Ohio St. 192.
*280 2. On the trial the defendant offered his wife as a witness, and the state objected. The court held that she was not a competent witness, and sustained the objection. This ruling is claimed to be erroneous. Steen v. The State, 20 Ohio St. 333, touching this point, may be safely regarded as conclusive. It was expressly held in that case, that, on the trial of a criminal prosecution, the wife of the accused is not a competent witness for him, and that her incompetency in criminal cases was not removed by the provisions of either the criminal or civil codes of procedure.
3. The next point presents a question of less easy solution, viz.: who may be l’egarded as the “ keeper ” of a room for the unlawful sale of intoxicating liquors, within the meaning of the section under which the defendant was indicted ?
The question arises upon the charge of the court to the jury, which was given with reference to the facts developed on the trial. This, as well as the meaning and object of the statute, must be kept in view, in considering whether the charge was erroneous.
The defendant-was indicted under section 4 of the act of May 1, 1854 (S. & C. 1431), which declares that all places where intoxicating liquors are sold, in violation of the act, shall be held to be common nuisances, and that the room or other place of public resort, where such liquors are so sold, shall be shut up and abated as a public nuisance upon the conviction of the “ keeper ” thereof, who is to be punished, as provided in another section, by fine and imprisonment, or both.
It is the clear purpose of the statute to abate such nuisances, and to prevent their occurrence, by punishing the keepers thereof. To this end, a broad and generic word is used, in describing the person amenable to its penalties. It does not necessarily mean the owner of the room, nor the owner of the liquors unlawfully sold. Both may belong to another person, and yet the room may be kept and the business conducted by one who has sole control of both the room and the business, and who is alone responsible for the nuisance, which may cease or continue *281 -•at his will. It would not be difficult to give instances. Such a person would clearly come within the mischief aimed at by the statute. The descriptive words of the statute are broad enough to include him. The word “ keeper ” is defined to be one who has the care, custody, or superintendence of anything; as the keeper of a park, a pound, a gate, a prison, and (in the English law) keeper of a forest, great seal, and privy seal. The word, therefore, does not necessarily mean ownership; but, while it may include an owner, it also embraces one who has the possession and control of a place, thing, or business. The statute, then, is broad enough to include one who, though not the owner of the room or the liquors unlawfully sold, has the possession of both, which, together with the business, are iu his care and subject to his control. Otherwise, a person, as agent of one living in a foreign state or county, might keep, with impunity, a place of public resort in this state wdiich the law declares to be a public nuisance. In view of the mischief aimed at, the comprehensive word “ keeper ” is not used in the statute in such restricted sense. While it may not include a mere clerk or servant of one carrying on the unlawful business, it clearly embraces any one who has the custody, care, control, and management of the place and unlawful business.
The charge of the court was in accordance with this view of the law, and directly applicable to the case before it, in which it appeared that the liquors and the place where they were sold were held in the name of the defend.ant’s wife; that the whole were in his custody, and that the business of selling intoxicating liquors at the place was .advertised and carried on in his own name, and under his own control. There was, then, no error in the charge.
4. In respect to the order of the court, which was directed to the sheriff of the county to shut up and close the defendant’s place of business, it is only necessary to say that it was not in accordance with the statute as construed in Miller and Gibson v. The State, 3 Ohio St. 475.
The order is not to be directed to or executed by any *282 officer; but must be an order to the person convicted, obedience to which may be enforced, if the nuisance be continued, by attachment for contempt of court.
'It follows that the judgment must be affirmed in all respects, except as to the order directing the sheriff to close the defendant’s place of business, which order must be reversed, and the cause remanded for such proceedings, in regard to the abatement of the nuisance, if continued, as are authorized by law.

Judgment accordingly.